**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

**LARRY G. PHILPOT,**

    **Plaintiff,**

                              **NO. 5:17-cv-173-JMH**

**V.**

**L.M. COMMUNICATIONS II OF**
**SOUTH CAROLINA, INC.,**

    **Defendant.**

---

**DEFENDANT'S PRE-TRIAL MEMORANDUM**

---

This pre-trial memorandum is submitted on behalf of Defendant, L.M. Communications II of South Carolina, Inc. ("LMSC") in accordance with the Court's Scheduling Order [Doc #20].

**STATEMENT OF THE CASE**

LMSC owns and operates radio station WCOO-FM licensed to Kiawah Island, South Carolina. In February, 2014, LMSC sold on-air advertising to the promoter of a concert featuring Alison Krauss and Willie Nelson and which was scheduled for May 8, 2014. As an unpaid service to its customer and the general public, on or about March 31, 2014, LMSC posted a notice of the upcoming concert on the local community events page of its website, 1055thebridge.com.[1] The notice included

---

[1]    LMSC's website is and was hosted by Intertech Media, LLC, based in Stamford, Connecticut. It does not reside on any server

a photograph of Ms. Krauss and a photo of Mr. Nelson in which Philpot claims a copyright. That photograph is the subject of this action (the "Nelson Photo"). There is no dispute that LMSC posted a copy of the Nelson Photo on the community events page of its website on or about March 31, 2014.

Except for posting a notice of the upcoming concert (which included the Nelson Photo) on its community events page, LMSC did not otherwise copy or publish the photograph. It did not receive any revenue from its use of the Nelson Photo and did not attempt to do so. It did not attempt to sell or otherwise benefit financially from the photograph. LMSC sells over-the-air advertising. There is no increase in price if LMSC, as an unpaid service, posts the advertiser's event on its community events page. Transcript of LMSC's Deposition ("LMSC Transcript") at 38, a partial copy of which is attached as Exhibit 3 [Doc #44-3] to Philpot's Memorandum in Support of its Motion for Summary Judgment.

Philpot actually discovered the presence of the Nelson Photo on LMSC's website on April 29, 2014, approximately one week before the concert. Transcript of Deposition of Larry Philpot ("Philpot Transcript" at 38-45, a copy of which is attached as Exhibit A to LMSC's Memorandum in Opposition to Philpot's Motion for Summary Judgment [Doc #52]. He did not notify LMSC of his claim of rights in the Nelson Photo until

_____

owned by LMSC.

over six months later, when he sent a "cease and desist" letter dated November 18, 2014, to LMSC. *Id.* at 47. Philpot does not know whether he checked LMSC's website after April 29, 2014, to determine whether and for how long the Nelson Photo was visible after that date. *Id.* at 49. He does not even know whether the Nelson Photo was visible on LMSC's website at any time after April 29, 2014. *Id.* Philpot testified he did not know whether or not he attempted to capture a digital image of the Nelson Photo on LMSC's website. *Id.* He further testified he does not know whether or not he had a digital image of the Nelson Photo at the time of his deposition. *Id.* at 50.

The November 18, 2014, Philpot cease and desist letter was addressed to Scooter Stevens at the offices of LM Communications at 401 West Main Street, Lexington, Kentucky. Mr. Stevens is not and was not an officer or even an employee of LMSC. LMSC's studio is located at 49 Windermere, Charleston, South Carolina. The station manager at that location at the time was Charles Cohn.

The sole shareholder, officer and director of LMSC, Lynn M. Martin, was in Australia visiting his daughter when the November 18, 2014, letter arrived on November 28, 2014. Mr. Stevens recalls that he contacted Mr. Martin, explained the substance of the letter and then placed a call to Charles Cohn, the LMSC station manager and advised LMSC had received a demand and that LMSC should take the photo down. It appears

3

that Kelly Bazzell, a former employee of LMSC, either deleted the Nelson Photo from the website server or instructed Intertech Media to do so.  Before she did so, she made two screen shots of the Nelson Photo and a related computer screen.

Philpot makes much of the subject of metadata in photos in his motion papers.  Philpot testified at deposition, however, that he did not know whether the image used by LMSC contained metadata, whether LMSC removed any metadata, whether anyone at LMSC knew how to remove metadata or how LMSC would have done so if it so desired.  Philpot Transcript at 56-57, 72.

As LMSC understands it, a person who wishes to copy, distribute, sell and profit financially from an electronic image of the Nelson Photo might have an incentive to remove metadata from the electronic image because that metadata might reveal that Philpot took the photo and possibly that he claimed a copyright in the photo.  Removing the metadata could conceal a claim of ownership of a photo.  Here, LMSC had no incentive whatsoever to remove any metadata because it did not attempt to distribute the photograph or profit from its use. It had no idea at the time that Philpot claimed rights in the photograph.  LMSC removed or caused to be removed the Nelson Photo from its website as soon as it received Philpot's demand letter.

The Court should note that LMSC is a small company.  It

did not and does not have an IT department.  It did not and does not have a legal department.  If anyone employed or associated with LMSC actually knew how to remove metadata from a photograph that would come as a surprise to LMSC.

The Court also should note that Philpot's inexplicable delay – over six months – in asserting his claimed rights severely prejudiced LMSC's ability to investigate how and where LMSC obtained the Nelson Photo.  LMSC is a small company which uses, on occasion, the services of unpaid interns.  Had Philpot promptly notified LMSC when he learned of the presence of the Nelson Photo on its website, LMSC could have removed the Nelson Photo, investigated the facts and made a proper resolution.  It was grossly inequitable for Philpot to lie in the weeds, perhaps in the hope that some evidence of his claimed damages would appear and increase over time.  That inequitable conduct and delay disqualifies Philpot from any form of equitable relief or damages.

## **QUESTIONS OF FACT**

LMSC believes the following disputed issues of fact remain for trial:

1.    Whether Philpot is the owner of a valid copyright on the Nelson Photo.

2.    Whether Philpot registered his copyright claim with the Register of Copyrights prior to instituting this lawsuit.

3.    Whether LMSC removed copyright management information from the Nelson Photo.

5

4.    Whether any infringement of Philpot's copyright was willful; whether the posting on LMSC's website was done with actual knowledge that its conduct constituted copyright infringement.

5.    Whether LMSC was unaware and had no reason to believe that its acts constituted copyright infringement.

### QUESTIONS OF LAW

1.    Whether LMSC made "fair use," within the meaning of 17 U.S.C. § 107, of the Nelson Photo.

2.    Whether Philpot is entitled to recover statutory damages against LMSC pursuant to 17 U.S.C. § 504, and, if so, the amount of such damages.

3.    Whether Philpot should be awarded costs pursuant to 17 U.S.C. § 505.

Respectfully submitted,

/s/ William W. Allen
        William W. Allen
GESS MATTINGLY & ATCHISON, P.S.C.
201 West Short Street
Lexington, Kentucky 40507-1269
Telephone:  (859) 252-9000
Facsimile:  (859) 233-4269
E-Mail:  wallen@gmalaw.com
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants of record in the above-styled action.

/s/ William W. Allen
*Counsel for Defendant*

1141mlp.me7
39564-3.1
031318

7