UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LARRY G. PHILPOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.5:17-CV-173-CHB |
| v. ) | |
| ) | |
| LM COMMUNICATIONS II OF SOUTH ) | |
| CAROLINA, INC., ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*

This matter is before the Court upon Defendant and Plaintiff's Motions for Sanctions [R. 36, R. 42; Responses at R. 37, R. 53; Replies at R. 47, R. 67; Sur-Reply at R. 75]; Plaintiff's Motion for Attorneys' Fees [R. 39; Response at R. 48; Reply at R. 51]; and Plaintiff's Motion for Summary Judgment [R. 44; Response at R. 52 ; Reply at R. 66].[1] The Court is sufficiently advised, and these motions are ripe for decision.

**I. Facts and Procedural History**

Plaintiff Philpot is a professional concert photographer. On October 4, 2009, he took a photograph of Willie Nelson during a Farm Aid concert in Saint Louis, Missouri. He published the Nelson photograph online on Wikipedia in 2011 and offered a license to use the Nelson photograph free of charge for any online users that comply with the terms of the Creative

---

[1] The Court has also considered Plaintiff's Motion for Leave to File Separate Statement of Undisputed Facts [R. 54] and concludes that it should be granted. The Court will also grant Plaintiff's Motion to File Supplemental Reply in Support of Plaintiff's Motion for Sanctions [R. 72; Response at R. 73 (stating no objection)].

Commons Attribution 2.0 Generic License ("Creative Commons license").[2] These terms include proper attribution to Philpot, that the licensee reference the Creative Commons license, and that the licensee provide attribution to the copyright holder in the manner specified, including name, title, and uniform resource identifier, all of which are provided in connection with the photograph file shared on Wikipedia.

Philpot then registered the Nelson photograph with the United States Copyright Office on September 5, 2012, and received Certificate of Registration No. VAu 1-132-411 for a collection of works known as "2009 Musician Photos." [R. 44-1 at pp. 4–5, Page ID#: 472–73.]

In February 2014, Defendant LM Communications II of South Carolina, Inc. ("LM Communications"), posted a copy of the Nelson photograph on its website, 1055thebridge.com, as part of a promotion or announcement for a then-upcoming concert by Nelson and Allison Krauss.[3] LM Communications had a commercial interest in the concert, having sold on-air advertising to AEG, the promoter of the concert, for the May 8, 2014, event, but was not specifically under contract to provide promotional posts on its website. Nonetheless, in anticipation of that concert, LM Communications posted the Nelson photograph on the community events page of its website along with other notable community events. LM Communications did not otherwise copy or publish the photograph.

Philpot did not provide permission to LM Communications to use the photograph outside of the scope of the Creative Commons license. There is no evidence that LM Communications

---

[2] *See* https://creativecommons.org/licenses/by/2.0/ (last visited July 9, 2018). On motion for summary judgment and in his trial brief, Plaintiff takes the position that the Court may take judicial notice of the Creative Commons license under Fed. R. Civ. P. 201 and argues, by counsel, that it is a "concededly authentic document." In the absence of any objection, the Court agrees and takes judicial notice of the existence and contents of the Creative Commons license upon which Plaintiff relies.

[3] LM Communications owns a radio station located in South Carolina but is headquartered in Lexington, Kentucky.

posted the photograph on its website with attribution or referenced the Creative Commons license in connection with the photograph posted, even though it is clearly the same image shared on Wikipedia.

Philpot discovered that LM Communications had used the Nelson photograph on April 29, 2014, when he saw the photograph on its website. While he took a screenshot of the image in use on LM Communications' website, he does not have a digital copy of what he saw on the website that day and does not know whether the image copy used by LM Communications ever had copyright management information associated with it. Nor does he know whether anyone at LM Communications removed any copyright management information before posting the photograph on its website.

He first contacted LM Communications about his claims concerning the Nelson photograph in a cease and desist letter dated November 18, 2014. In that letter, he asked that LM Communications stop using his photograph on its website and take "immediate steps to assure that information (both in paper and electronically-stored form) relating the use of [his] image is not altered, deleted, or otherwise tampered with" and asked that Defendant "construe this letter as a formal notice of [LM Communication's] continuing legal obligation to preserve all such information until further advised."[4] [*See* R. 44-3 at p. 52, Page ID#: 542.]

Kelly Bazzell, a now-former employee of LM Communications, either deleted the photograph from the website or instructed Intertech Media, LLC, who hosted the website, to do so after the cease and desist letter was received. She made two screenshots of the Nelson

---

[4] The record contains no evidence of the contents of Plaintiff's demand to remove the Nelson photograph from Defendant's website, although the parties agree that Plaintiff asked Defendant to do so and that Defendant complied. The sole copy of the November 18, 2014, letter presented in this case has been inexplicably redacted to remove all of the language of that request, leaving only the portion of the letter demanding preservation of evidence for the Court's review.

3

photograph and the related items on the computer screen before she did so. LM Communications is not aware of the identity of the individual who originally posted the photograph or from where he or she obtained the photograph but its agents theorized amongst themselves that an intern posted it.[5] LM Communications concedes that the photograph is the same image in which a copyright is claimed by Plaintiff.

Almost three years after discovering the Nelson photograph on Defendant's website, Plaintiff filed his Complaint [R. 1], *pro se*, on April 7, 2017, averring that Defendant posted a copy of a photograph of Willie Nelson on its website as part of a promotion or announcement for an upcoming concert by Nelson and Allison Krauss, that he holds the copyright for the Nelson photograph, and that Defendant failed to observe the licensing agreement available to them when it did not provide appropriate attribution of the photograph to him. He claims relief for copyright infringement, 17 U.S.C. § 501; removal of copyright management information and, by extension, contributory copyright infringement under § 1202(b)(3). After Defendant filed its Amended Answer and Counterclaim [R. 11], the Court entered a scheduling order on August 22, 2017 [R. 15], and the parties proceeded to engage in a series of discovery disputes. [*See* R. 14, R. 16, R. 18–19, R. 21–23, R. 25].

Attorney Stacy Cole filed a Notice of Appearance on behalf of Plaintiff Philpot on January 3, 2018 [R. 28]. At that time, by counsel, Plaintiff sought a 90-day extension of time for all deadlines that remained in the case and a 30-day extension of time to respond to Defendant's First Set of Interrogatories and Requests for Production of Documents. [R. 29.] Defendant objected. Ultimately, Magistrate Judge Atkins ordered that all answers to outstanding discovery

---

[5] A former intern known as "Jessica" or "JBT" is referenced as the likely individual in an email exchange between Bazzell and another individual, Ashley Caldwell. [*See* R. 44-3 at p. 49, Page ID#: 539.] There is no evidence which suggests that either party has sought or obtained testimony or affidavits from that individual with respect to this matter.

4

requests be provided by Plaintiff to Defendant no later than January 14, 2018. [January 9, 2018, Minute Entry Order, R. 32.] Judge Hood then ordered that the deadline for fact and opinion discovery be extended for Defendant through January 31, 2018, declined to afford any further relief with respect to the schedule, and advised Plaintiff that any failure to appear for deposition or to respond to discovery might result in dismissal of the case for failure to participate in discovery. [January 10, 2018, Order, R. 33.]

A deposition of Plaintiff, originally scheduled for January 12, 2018, was cancelled, and LM Communications then sought to depose Philpot on January 26, 2018 [January 12, 2018, Amended Notice, R. 34]. That deposition was cancelled on January 25, 2018 [January 25, 2018, Notice, R. 35] after the attorneys were unable to reach a timely agreement on a proposal for a protective order by Plaintiff and Plaintiff failed to make his final production of documents in advance of the scheduled deposition. Ultimately, however, Plaintiff provided the relevant documents with an agreed protective order in place, [*see* R. 41], and appeared for the rescheduled deposition on February 21, 2018.

## II. Motions for Sanctions

### A. Defendant's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37

Federal Rule of Civil Procedure 37 gives the Court broad discretion to impose sanctions for a party's failure to cooperate in discovery, failure to comply with a court order, and other discovery abuses. In its Motion for Sanctions, Defendant seeks dismissal of Plaintiff's claims for his failure to follow the Court's discovery orders and complete discovery by producing documents responsive to requests that were in his possession and to participate in his deposition by the deadline set out in the Court's order modifying the schedule in this matter [R. 15]. He seeks, alternatively, an award of attorney fees for the time and effort necessary to compel discovery.

Because he failed to timely respond to discovery requests within the time frame provided by the Court, it can be fairly said that Plaintiff did not cooperate in the discovery process as directed by the Court's Order, notwithstanding the scheduling and objections to confidentiality issues encountered by the parties, particularly in the absence of a pending motion for a protective order under Fed. R. Civ. P. 26(c). *See* Fed. R. Civ. P. 37(d)(2). That said, Defendant cancelled Philpot's deposition in the absence of the production of documents, which means that he did not fail to appear, and immediately sought sanctions from the Court concerning his failure to provide responses and complete discovery in a timely fashion without making the required certification that LM Communications had, in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the response without court action. *See* Fed. R. Civ. P. 37(d)(1)(B). This alone is reason to deny the motion, for the rule is clear that a motion for sanctions for failing to respond "must include a certification." *Id*. Further, there is no dispute that Plaintiff ultimately provided the relevant documents with a protective order in place and appeared for the rescheduled deposition, resulting in only a month's delay in the schedule for his deposition. Defendant has identified no prejudice to its defense as a result of this delay and, notably, did not rely on the documents produced during this period in order to present its objections to Plaintiff's Motion for Summary Judgment.

It follows that Defendant's Motion for Sanctions will be denied. All of the trouble for these parties might have been avoided had counsel for both acted with more time to spare. Thus, the Court also declines to award Plaintiff the amount of his attorney fees incurred in responding to the motion, as he requests in his Response.

B. **Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 26 and 37 and the Court's Inherent Power**

Plaintiff argues that Defendant should be sanctioned for failing to preserve a "native copy" of the Nelson photograph in its possession at the time he sent them his demand to cease and desist using it on their website and that an adverse inference should be made that Defendant infringed his copyright and deleted copyright management information. [*See* R. 42.] Federal courts have the "inherent power to control the judicial process" in the proceedings before them and broad discretion to craft sanctions against a party for spoliation of evidence that serve both fairness and punitive functions. *Adkins v. Wolever,* 554 F.3d 650, 652–53 (6th Cir. 2009); *Beaven v. United States Dep't of Justice,* 622 F.3d 540, 553, 554 (6th Cir. 2010) (reviewing district court's decision on sanctions for the spoliation of evidence under the abuse of discretion standard). A party seeking the adverse inference instruction based on the destruction of evidence must demonstrate that,

> . . .the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; *and* (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Thus, an adverse inference for evidence spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction. This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction.

*Beaven*, 622 F.3d at 553–54 (quotation marks and citations omitted). Further, Fed. R. Civ. P. 37(e)(1) and (2) provide that, "upon finding prejudice to another party from loss of [electronically stored information] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it", the Court "may order measures no greater than necessary to cure the prejudice" or, "upon finding the party acted

with the intent to deprive another party of the information's use in the litigation may . . . presume that the lost information was unfavorable to the party; . . . instruct the jury that it may or must presume the information was unfavorable to the party; or . . .dismiss the action or enter a default judgment."

Plaintiff argues that, by removing the copy of the Nelson photograph which appeared on Defendant's website, as Plaintiff requested, but then failing to preserve a native copy of the digital file in their possession, Defendant destroyed his ability to discover what, if any, metadata containing copyright management information was present as part of that file or was removed from that digital file. Thus, he urges that he is due an inference that Defendant removed it. The Court is not persuaded.

First, there is no record of what litigation Plaintiff threatened in his cease and desist letter because Plaintiff redacted most of its contents before filing it in the record. Thus, the Court cannot determine that Defendant had a particular obligation to preserve a digital copy of the Nelson photograph file at that time. Even if the Court assumes he complained of infringement of his copyright in the Nelson photograph in violation of 17 U.S.C. § 502, prompting Defendant to remove the Nelson photograph from its website, there is no evidence that Plaintiff complained of the removal of any copyright management information actionable under 17 U.S.C. § 1202. In other words, Plaintiff has not demonstrated that Defendant knew the digital evidence contained in that file was relevant to Plaintiff's claim under § 1202.

Further, Plaintiff offers no evidence—lay or opinion—of what information might have been gleaned from a digital copy of the file that would be relevant to an issue at trial and is not already available to him. He believes that the "image that [Defendant] used specifically can tell us whether or not the metadata was removed[,]" but offers no suggestion of how that might be.

8

[R. 67 at p. 3, Page ID#: 930 (citing R. 52-1 at p. 56, ll. 8-10, Page ID#: 660).] Plaintiff had an opportunity to inspect the image available on Defendant's website before it was deleted months later at his insistence and observed that the copyright management information was missing. [*See* Philpot Affidavit, R. 44-1 at 3, ¶ 8, Page ID#: 471 ("On or around April 29, 2014, I discovered that a copy of the Nelson photograph appeared on www.1055theBridge.com. The posting did not provide attribution….[n]or did it appear to include the metadata that appears with the photo as posted on Wikipedia.")]. When asked in deposition what was removed, he responded "I do not know what was removed" and, then, clarified "I didn't see any of [the DCMA copyright management information]." [Philpot Depo., R. 52-1 at 82, ll. 13, 15, Page ID#: 676.] When asked "whether or not [Defendant] removed any copyright management information from the photo at issue in this case," Philpot responded, "No, I do not know that." [*Id.* at ll. 21–25]. He further testified that he "couldn't possibly know [whether there was any DCMA copyright management information or metadata on the photo when it came into L.M. Communications' possession]. . . because I don't know where they . . . got the image." [*Id.* at 83, ll. 1–5, 7–8, Page ID#: 677.]  He suggests in a conclusory fashion that the file in Defendant's possession at the time it was removed from its website would have provided him more information about the absence of copyright management information than he could glean during his original investigation of this matter, but offers nothing more about what that information might be or how it is relevant to his § 1202 claim. This is not enough to support the sanction he seeks – an inference that Defendant removed the copyright management information. He would have this Court create a variation on *res ipsa loquitur*, such that posting a copy of an image without copyright management information speaks for itself – that the posting party must have removed it.[6] The Court is unwilling to speculate and concludes that, if anything, only an inference that the

---

[6] Of some concern to the Court is whether it was appropriate for Plaintiff to bring this claim without investigating

image lacked the copyright management information is appropriate. As it happens, Plaintiff has presented evidence from which a fact finder could reasonably conclude that that the copyright management information was not present in or with the copy of the photograph on Defendant's site, and there is no evidence to the contrary. Accordingly, no inference that Defendant deleted the copyright management information is warranted under these facts. Plaintiff's Motion for Sanctions will be denied.

### III. Plaintiff's Motion for Summary Judgment

Finally, the Court considers Plaintiff's Motion for Summary Judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003). The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

---

further to see if it could be determined from the image file that he discovered online whether the metadata had been removed. In other words, the Court wonders whether Plaintiff conducted a reasonable inquiry under the circumstances as he investigated this case. *See* Fed. R. Civ. P. 11(b)(3) (stating that when an attorney or unrepresented party presents a pleading to the court, he or she "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."). This question is not before the Court today, and the Court will not consider it further at this time.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict, and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy. Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

## A. Laches

As an initial matter, the Court declines to deny Plaintiff's motion for summary judgment upon Defendant's argument that the doctrine of laches should bar Plaintiff's recovery on his claims. In this circuit, laches can be applied in copyright cases and is understood to be "'a negligent and unintentional failure to protect one's rights'," but "'[a] party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.'" *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231, 234 (6th Cir. 2007) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991); *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F.3d 298, 320 (6th Cir. 2001)). Defendant argues that it was unduly prejudiced by Plaintiff's three-year wait to file suit on his copyright claims because, had Philpot notified it promptly after his discovery of the Nelson photograph on its website in April 2014, it would have been in a better position to find

11

out exactly what happened, who was involved, and to conclusively prove that its use of the Nelson photograph was innocent and utterly without knowledge of Philpot's claims.

Any prejudice which might have otherwise been visited on Defendant by Plaintiff's decision to wait three years to bring suit after discovery of the use of the Nelson photograph by Defendant on its website was mitigated by the fact that Plaintiff placed Defendant on notice of his claim within six months by sending a letter asking Defendant to cease and desist from its use of the Nelson photograph. At that time Defendant might have solidified its understanding of the claims and how it came to use the Nelson photograph on its website – and at the very least should have known to preserve evidence related to a potential litigation of which Plaintiff warned.

This is not the rare case with compelling reasons and unusual circumstances which might merit relief upon the application of the doctrine of laches, and the Court declines to deny Plaintiff's motion for summary judgment on these grounds. *See id.* at 232–33 (citing *Ford Motor Co. v. Catalanotte,* 342 F.3d 543, 550 (6th Cir. 2003) (presumption that trademark infringement action is alive if brought within analogous statute of limitations period); *Herman Miller,* 270 F.3d at 321; *Patton v. Bearden,* 8 F.3d 343, 348 (6th Cir. 1993) ("strong presumption that laches will not apply when the analogous state statute of limitations in contract action has not run, absent compelling reason"); *Elvis Presley Enters.,* 936 F.2d at 894 (strong presumption in trademark infringement case that delay within statute of limitations period is reasonable absent "compelling reasons")).

### B. Copyright Infringement

Next, the Court concludes, as a matter of law, that Defendant infringed Plaintiff's copyright in the Nelson photograph. "Anyone who violates any of the exclusive rights of the

12

copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), is an infringer of the copyright . . ." 17 U.S.C.A. § 501(a) (West), abrogated on other grounds by *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1299 (11th Cir. 2011). The owner of a copyright under Title 17 has the exclusive right to reproduce or authorize reproduction of the copyrighted work" or "to display the copyrighted work publicly..." 17 U.S.C. § 106(1) and (5). The right is not, however, absolute. "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching,. . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (proponent bears burden of proof for affirmative defense of "fair use"). Additionally, "[a] license is a defense to a claim of copyright infringement." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Johnson v. Jones,* 149 F.3d 494, 500 (6th Cir. 1998); *John G. Danielson, Inc. v. Winchester–Conant Prop., Inc.,* 322 F.3d 26, 40 (1st Cir. 2003)).

Plaintiff was the photographer who took the original Nelson photograph, and he obtained a certificate of registration for it within five years of publishing it on Wikipedia. Thus, he owns a valid copyright in the Nelson photograph.[7] *See* 17 U.S.C. § 102(a); 17 U.S.C. § 410(c); *Burrow-Giles Lithographic v. Sarony*, 111 U.S. 53 (1884) (recognizing that a photo of a human being is sufficiently original to give the person who snapped the picture copyright protection); *Lexmark Intl, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 534 (6th Cir. 2004) (explaining that certificates of registration obtained before or within five years of the first publication of a work create a rebuttable presumption of a valid copyright, and alleged infringers bear the burden of rebutting the presumption)., Plaintiff, as the presumptive copyright owner, had the exclusive

---

[7] Defendant's conclusory suggestion that Plaintiff's certificate of registration provided in this matter does not cover the Nelson photograph is not adequate to rebut his sworn assertion that it does.

right to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work; and distribute copies of the copyrighted work to the public, as he saw fit. *See* 17 U.S.C. § 106. Nonetheless, in this instance, Defendant used an exact copy of a cropped portion of that work—posted on Wikipedia and available for use by all comers for the mere price of compliance with the terms of the Creative Commons license offered by Philpot—on its website. There is no evidence that Defendant did so with Plaintiff's express permission or having obtained a license by accepting and observing the terms of the Creative Commons license offered by Philpot. This is enough to establish infringement under § 501(a). *Roger Miller Music, Inc.*, 477 F.3d at 395 (6th Cir. 2007); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (explaining that, "if no direct evidence of copying is available, a claimant may establish this element by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar") (citing *Kohus v. Mariol*, 328 F.3d 848, 853–54).

Further, Defendant cannot demonstrate that "fair use" protects it from liability for use of the copyrighted Nelson photograph because the copy was not used for "criticism, comment, news reporting, teaching,. . . scholarship, or research" and the reproduction of the work—the copy of the Nelson photograph on Defendant's website—was not "transformative" since it did nothing more than "repackage or republish the original copyrighted work." 17 U.S.C. § 107; *Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012); *Design Basics, LLC v. Petros Homes, Inc.*, 240 F. Supp. 3d 712 (N.D. Ohio 2017) (quoting *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). Nor can Defendant rely upon any assertion of innocence to defend against the claim of infringement, as the Court cannot excuse liability for infringement on this ground. *See Frank Betz Assocs., Inc. v. Signature Homes, Inc.*, No. CIV.A. 3:06-0911, 2009 WL

2151304, at *14 (M.D. Tenn. July 13, 2009) (citing 4–13 *Nimmer* § 13.08) ("There is no innocent infringer defense to copyright infringement."). Rather, the Court may consider the relative culpability of the infringer, including willfulness, in determining damages, which is a question for another day. *See* 17 U.S.C. § 504(c)(2).

Plaintiff's Motion for Summary Judgment on his claim for copyright infringement under 17 U.S.C. § 501 will be granted and Defendant's counterclaim for declaratory judgment dismissed in this regard as there is no genuine issue of material fact and no probative evidence from which the jury could reasonably find that Defendant, the nonmoving party, could make a sufficient showing to rebut Plaintiff's presumption of a valid copyright or bear its burden of proof to establish fair use or a license to reproduce the Nelson photograph. *See Anderson,* 477 U.S. at 250–52; *Celotex Corp.,* 477 U.S. at 323–24 (1986); *Lansing Dairy. Inc.,* 39 F.3d at 1347. Damages for this infringement will be decided by further motion of the parties, if requested and appropriate, or at trial. *See* 17 U.S.C. § 504(a)(2) and (c)**.**

### c. Removal of Copyright Management Information and Contributory Copyright Infringement

Finally, the Court turns to Plaintiff's Motion for Summary Judgment on the alleged violation of 17 U.S.C. § 1202, which provides that,

> No person shall, without the authority of the copyright owner or the law–
>
> **(1)** intentionally remove or alter any copyright management information,
>
> **(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

15

> **(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C.A. § 1202(b). "'Copyright management information' means "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form. . .[t]he title and other information identifying the work, including the information set forth on a notice of copyright. . .[;] [t]he name of, and other identifying information about, the author of a work. . .[; t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. . .[; and t]erms and conditions for use of the work. . . ." 17 U.S.C. § 1202(c)(1), (2), (3), and (6).

Plaintiff's affidavit and deposition, referenced elsewhere in this Memorandum Opinion and Order, establish that the copyright management information associated with Plaintiff's Nelson photograph was not present in or with the copy of the image posted on Defendant's website. Whether it was removed by Defendant, intentionally or otherwise, with the knowledge that it would induce, enable, facilitate, or conceal an infringement for the purposes of the statute, remains to be seen. There is simply no evidence available to the Court in support of the present motion from which it may draw the legal conclusion that Defendant acted in violation of this statute. Accordingly, summary judgment will be denied to Plaintiff as to his claim under 17 U.S.C. § 1202.

D. **Defendant's Counterclaims for Abuse of Process and Malicious Prosecution**

Finally, in its Response to Plaintiff's Motion for Summary Judgment [R. 52], Defendant states that it will not pursue two of its three counterclaims – for abuse of process and malicious prosecution. Accordingly, these claims will be dismissed with prejudice.

Accordingly, **IT IS ORDERED**:

(1) That Plaintiff's Motion to File Supplemental Reply in Support of Plaintiff's Motion for Sanctions [**R. 72**] is **GRANTED**;

**(2)** That Plaintiff's Motion for Leave to File Separate Statement of Undisputed Facts [**R. 54**] is **GRANTED**;

**(3)** That Defendant's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37 [**R. 36**] is **DENIED**;

(4) That Plaintiff's Motion for Attorneys' Fees [**R. 39**] is **DENIED;**

(5) That Plaintiff's Motion for Sanctions [**R. 42**] is **DENIED;**

(6) That Plaintiff's Motion for Summary Judgment [**R. 44**] is **GRANTED IN PART** and **DENIED IN PART**.

This the 10th day of July, 2018.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY