UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LARRY G. PHILPOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:17-CV-173-CHB |
| v. ) | |
| ) | |
| L.M. COMMUNICATIONS II OF SOUTH ) | |
| CAROLINA, INC., ) | **FINDINGS OF FACT AND** |
| ) | **CONCLUSIONS OF LAW** |
| Defendant. ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*

This is an action for copyright infringement pursuant to 17 U.S.C. § 501 *et seq.* (the "Copyright Act") and is before the Court for a final determination of the amount of statutory damages to which Plaintiff Larry G. Philpot ("Philpot") is entitled as a result of the infringement of a copyrighted work by Defendant L.M. Communications II of SC, Inc. ("LM Communications"). For reasons stated herein, the Court finds that the infringement in question was not willful pursuant to 17 U.S.C. § 504(c)(2), awards statutory damages in the amount of $3,500.00 pursuant to 17 U.S.C. § 504(c)(1), and denies an award of attorney's fees and costs under 17 U.S.C. § 505.

  I.  **Findings of Fact**

  a.  **Factual Background**

Plaintiff Philpot is a professional concert photographer, shooting approximately 150 shows per year. On October 4, 2009, he took a photograph of Willie Nelson during a Farm Aid concert in Saint Louis, Missouri (the "Nelson photograph"). Philpot registered the Nelson

photograph with the U.S. Copyright Office on September 5, 2012, and received Certificate of Registration No. VAu 1-132-411 for a collection of works known as "2009 Musician Photos." [R. 44-1 at pp. 4–5, Page ID#: 472–73]  He published the Nelson photograph online on Wikipedia in 2011 as a way to boost his reputation as a professional concert photographer and increase his access to shows.  Philpot offered a license to use the Nelson photograph free of charge for any online users who comply with the terms of the Creative Commons Attribution 2.0 Generic License ("Creative Commons license").[1]  These terms include proper attribution to Philpot, that the licensee reference the Creative Commons license, and that the licensee provide attribution to the copyright holder in the manner specified, including name, title, and uniform resource identifier, all of which are provided in connection with the photograph file shared on Wikipedia.  Though he could have, Philpot opted not to include a watermark on the Nelson photograph he submitted to Wikipedia, since Wikipedia discourages placing a watermark on images it uses for its website.

Defendant LM Communications is a media company that owns Bridge 105.5, a radio station in South Carolina.[2]  Lynn Martin ("Martin") is 100% stockholder and president of LM Communications.  LM Communications also operated the website 1055thebridge.com.  The defendant is a relatively small company, with only 4 or 5 employees during the relevant time period, although Martin owns several other radio stations and has been in the radio business for over 30 years.

---

[1] *See* https://creativecommons.org/licenses/by/2.0/ (last visited July 9, 2018).  On motion for summary judgment and in his trial brief, plaintiff takes the position that the Court may take judicial notice of the Creative Commons license under Federal Rule of Evidence 201 and argues, by counsel, that it is a "concededly authentic document." In the absence of any objection, the Court agrees and takes judicial notice of the existence and contents of the Creative Commons license upon which plaintiff relies.

[2] LM Communications owns a radio station located in South Carolina but is headquartered in Lexington, Kentucky.

2

In February, 2014, LM Communications received a request from AEG Live, a concert promoter, for on-air advertising for a May 8, 2014 concert featuring Alison Krauss and Willie Nelson. The agreed net compensation to LM Communications for that advertising was $382.50. AEG Live later purchased additional on-air advertising of the concert for gross compensation to LM Communications in the amount of $500.00. Later in February,[3] Defendant LM Communications posted a copy of the Nelson photograph on its website, 1055thebridge.com, as part of an announcement for the upcoming concert. The announcement included a copy of the Nelson photograph identical to the one from the Wikipedia page. LM Communications had a commercial interest in the concert, having sold on-air advertising to AEG, the promoter of the concert, but was not under contract to provide promotional posts on its website. Nonetheless, in anticipation of that concert, LM Communications posted the Nelson photograph on the community events page of its website along with other notable community events. LM Communications did not otherwise copy or publish the photograph.

Philpot did not provide permission to LM Communications to use the Nelson photograph outside of the scope of the Creative Commons license. There is no evidence that LM Communications posted the Nelson photograph on its website with attribution or referenced the Creative Commons license in connection with the Nelson photograph posted, even though it is clearly the same image shared on Wikipedia.

Philpot discovered that LM Communications had used the Nelson photograph on April 29, 2014. Philpot took a screen shot of the image on the LM Communications' website, but did

---

[3] There is a discrepancy between the parties over when the photo was posted to the community events page. The plaintiff alleges it was posted in February 2014. *See* [R. 105, Pl. Am. Proposed Findings of Fact and Concl. of Law., at p. 4, ¶ 26]; *but see* [R. 104, Def. Am. Proposed Findings of Fact and Concl. of Law, at p. 2, ¶ 8] (stating the posting took place on March 31, 2014). The Court will accept the earlier of these dates, as this fact does not affect the analysis of statutory damages.

not contact LM Communications until November 18, 2014, when he sent a cease and desist letter. In this letter, Philpot asked LM Communications to stop using his photograph on its website and to take steps to assure that information regarding its use was not altered, deleted, or otherwise tampered with. *See* [R. 44-3 at p. 52, Page ID#: 542] LM Communications alleged that neither the announcement nor the Nelson photograph was visible on the LM Communications' website after May 8, 2014. Philpot contested this, but put forth no evidence to refute this statement.

Once LM Communications received the letter, the company immediately took steps to remove the Nelson photograph from its website. Kelly Bazzell, a now-former employee of LM Communications, either deleted the photograph from the website or instructed the company's website host to do so after the cease and desist letter was received. Bazzell made two screenshots of the Nelson photograph and the related items on the computer screen before deleting the post from the website. LM Communications never determined who made the original post, and neither party fully investigated whether the original source of the Nelson photograph contained attribution to Larry Philpot. Both parties acknowledged that the Nelson photograph in question most likely came from the Wikipedia page, and there is some evidence that the person responsible for copying it onto the website was an unpaid intern at LM Communications.[4] LM Communications concedes that the photograph is the same image in which a copyright is claimed by Philpot.

LM Communications had no written policies or procedures in place regarding the use of potentially copyrighted materials. There is no evidence that a manager or someone familiar with U.S. Copyright laws supervised the use of photographs or other potentially copyrightable

---

[4] A former intern known as "Jessica" or "JBT" is referenced as the likely individual in an email exchange between Bazzell and another individual, Ashley Caldwell. [R. 44-3 at p. 49, Page ID#: 539]

materials on the company's website, 1055thebridge.com. Given the small size of LM Communications, its employees were generally expected to go through Martin to get advice from counsel related to legal issues such as copyright protected materials. Still, there is no evidence that any employee contacted Martin prior to using the Nelson photograph. There is also no evidence that the person responsible for the original post knew that the image was copyright protected or knew that the action would constitute copyright infringement pursuant to 17 U.S.C. § 501.

### b. Procedural History

Almost three years after discovering the Nelson photograph on defendant's website, plaintiff filed his Complaint [R. 1], *pro se*, on April 7, 2017, averring that he holds the copyright for the Nelson photograph and that defendant failed to observe the licensing agreement available to it when it did not provide appropriate attribution of the photograph to him. *See id.* He claimed relief for copyright infringement, 17 U.S.C. § 501, removal of copyright management information and, by extension, contributory copyright infringement under § 1202(b)(3). He also sought an award of attorney's fees and costs under 17 U.S.C. § 505.

From the onset, this case has been wrought with discovery and other disputes. *See, e.g.* [R. 14; R. 17; R. 18–19; R. 21–23; R. 25; R. 36-37; R. 39; R. 42; R. 44] The Court resolved many of these issues in its Memorandum Opinion and Order dated July 10, 2018 (the "July Order") [R. 80] and granted summary judgment to Philpot on the issue of copyright infringement alone. In the July Order, the Court also denied LM Communications' motion for sanctions, denied Philpot's motion for attorney's fees, and denied Philpot's motion for summary judgment on LM Communications' alleged violation of the Copyright Management and Contributory

5

Copyright Infringement Act, 17 U.S.C. § 1202.[5] Following the July Order, Philpot withdrew his claim for damages under the Digital Millennium Copyright Act under 17 U.S.C. § 502. The parties also waived their rights to a trial by jury and requested to resolve the issue of the amount of damages via a bench trial. At the bench trial, the only issues before the Court were the amount of statutory damages to award Philpot pursuant to 17 U.S.C. § 504(c), and whether to award reasonable attorney's fees under 17 U.S.C. § 505. The Court will address each in turn.

## II.  Conclusions of Law

Under the Copyright Act, a copyright owner may elect to receive "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1). Whether to award statutory damages is a factual determination to be made by the Court. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345-46 (1998). Pursuant to § 504(c)(1), the Court may award a copyright owner statutory damages for each copyright infringed "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). However, if the plaintiff proves that the infringement was willful, the statute authorizes damages up to $150,000. *Id.* § 504(c)(2). Having concluded that infringement occurred,[6] and based on the plaintiff's election of statutory damages, the Court is "obligated to make an award of statutory damages for each infringement, though it has broad discretion concerning the amount awarded within the minimum and maximum statutory boundaries." *Digital Filing Sys., L.L.C. v. Aditya Int'l*, 323 F. App'x 407, 412 (6th Cir. 2009).

### a.  Damages under 504(c)(2)

---

[5] During the briefing for the Motion for Summary Judgment, Defendant withdrew its malicious prosecution and abuse of process claims.
[6] In its previous Memorandum Opinion and Order, the Court granted the plaintiff's motion for summary judgment on his claim for copyright infringement under 17 U.S.C. § 501. [R. 80, Mem. Op. and Order]

6

As a threshold inquiry, the Court must determine whether LM Communications' infringement was willful pursuant to 17 U.S.C. § 504(c)(2). If the infringement was not willful, the Court confines its award of statutory damages to the range captured in § 504(c)(1) – that is, between $750.00 - $30,000.00.[7]

In this Circuit, "[f]or infringement to be 'willful,' it must be done 'with knowledge that one's conduct constitutes copyright infringement.'" *Zomba Enterprises, Inc. v. Panorama Records, Inc.,* 491 F.3d 574, 584 (6th Cir. 2007) (quoting *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996)). Although the Sixth Circuit has not squarely addressed whether "actual knowledge" is required for a finding of willfulness, it has held that a defendant's "reckless disregard" for a plaintiff's copyright may support a finding of willfulness. *See Zomba*, 491 F.3rd at 584-585; *Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 585 F.3d 267, 278 (6th Cir. 2009) (stating that "willful copyright infringement requires evidence that a defendant knowingly or recklessly infringed on the copyright").

In *Zomba,* the Court found that defendant's reliance on the fair use doctrine was not reasonable because the defendant acted with reckless disregard for the plaintiff's property rights. Specifically, the court noted that defendant continued to sell karaoke CDs containing plaintiff's copyrighted songs after the court entered a consent order forbidding defendant to do so. *Id.* at 585. *See also Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (affirming a finding of willfulness where defendant publisher knew of plaintiff's copyright but argued it was engaging in fair use); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1114 (2d Cir. 1986) (defendant's position as an experienced publisher gave it constructive knowledge of its infringement where defendant was on notice of plaintiff's previous copyright);

---

[7] LM Communications failed to develop any argument that the infringement was "innocent" pursuant to 17 U.S.C. § 504(c)(1), so the Court declines to undertake any analysis on this issue.

*Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 658–59 (N.D. Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir. 1988) (court found willful infringement where plaintiffs sent proprietor of coffee store and restaurant numerous letters, requests, and offer to purchase license worth $3,500 and proprietor refused, telling plaintiffs to "sue [him]" in response); *See also N.A.S. Imp., Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (finding willfulness under the "reckless disregard" standard where similarity of buckle design, in conjunction with close proximity of plaintiff's and defendant's stores, strongly supported finding of knowing appropriation); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1001 (2d Cir. 1995) (recklessness found where copyright infringer knew of plaintiff's work, and designers sought to copy the design's "unprotected, non-original" aspects, and sold product at same time of year after first seeing protected works in department stores.).

Whether the standard is "knowledge" or "reckless disregard," plaintiff has failed to prove that LM Communications' actions were "willful" within the meaning of § 504(c)(2). Philpot admitted at trial he has no evidence that LM Communications knew of his copyright in the Nelson photograph prior to its publication on the community events website or that its conduct in doing so constituted copyright infringement. In fact, there is little, if any, evidence in the record that LM Communications even possessed constructive knowledge of Philpot's copyright. *Fitzgerald Pub. Co.*, 807 F.2d at 1114.

Willfulness may be inferred from a defendant's conduct, but typically only when the facts suggest that the infringers had been placed on notice by the copyright holder and had ample time to ameliorate the infringing acts prior to litigation. *See, e.g.*, *Kowalczyk*, 665 F. Supp. at 658–59. No such evidence is present here. Once LM Communications was made aware of the

infringement, it immediately removed the Nelson photograph from its website, took screen shots of the infringing post, and attempted to cooperate with Philpot.

Likewise, there is no evidence that LM Communications acted in reckless disregard for Philpot's copyright interest. Neither party provided the actual circumstances under which the defendant copied the Nelson photograph before posting it.[8] However, the parties acknowledged at various times that the Nelson photograph published on defendant's web page was identical to the one posted on Wikipedia, the likely source from which defendant copied the photograph. At trial Philpot acknowledged that anyone viewing the Wikipedia article who right-clicked on the image was able to copy the image to the user's desktop without seeing any information regarding Philpot's copyright or how to comply with the Creative Commons license. It is only if the user left-clicked on the image that the user will see the Creative Commons license information and how to comply with its terms. [R. 103, at pp. 81-84] Further, Philpot testified that he took no steps to "right-click protect" the Nelson photograph to prevent copying by innocent viewers unaware of his copyright:

| Defense Counsel: | Okay. And I believe you testified earlier that this image is not right-click protected. |
|---|---|
| Philpot: | Not to my knowledge. |
| Defense Counsel: | Have you done anything to prevent people from innocently right clicking on that Nelson photograph and copying it without seeing the information that relates to your ownership of the copyright and this image? |
| Philpot: | I have not. |

---

[8] The lack of evidence regarding the original source of the post is at least partly attributable to Philpot's delay in providing the defendant notice of its infringement. Philpot became aware of the infringing post on April 29, 2014, but waited until November 18, 2014 to notify the defendant through a cease and desist letter.

9

[R. 103, at pp. 87, ll. 3-10] Philpot failed to prove recklessness by either establishing that LM Communications' employees knew of his copyright, or that they should have had notice of the copyright and acted recklessly. *Fitzgerald Publishing Co.*, 807 F.2d at 1110; *Chenson Enterprises, Inc.*, 968 F.2d at 252.

Philpot spent a significant amount of time at trial establishing Martin's long history in the radio industry and pointing to his lack of controls regarding the use of potentially copyrighted materials. Although LM Communications did lack formal controls and written policies on the subject, at the time of the infringement LM Communications had just launched its website, 1055thebridge.com, only had 4 or 5 employees, and did not have a sophisticated IT department. There is nothing in the record establishing that, under these facts, defendant acted in reckless disregard of Philpot's property interests,[9] or that defendant clearly failed to follow industry norms for a company of this size.

Pursuant to Section 504(c)(2) of the Copyright Act, it is the plaintiff's burden to prove that the defendant acted with knowledge or with reckless disregard for the plaintiff's copyright interests. *Bridgeport Music, Inc.,* 585 F.3d at 278. Philpot failed to meet his burden.

### b. Damages under 504(c)(1)

Having found that the infringement in this case was not willful, the Court must now determine the appropriate amount of damages pursuant to 17 U.S.C. § 504(c)(1). Trial courts have wide discretion in setting damages within the statutory range. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231-232 (1952). Although the Sixth Circuit has not

---

[9] Philpot testified that he intentionally elected not to place a watermark on the Nelson photograph, giving notice of his claim of rights in the image, before he uploaded it to Wikipedia, the likely source of the photograph. *Id.* at ¶ 39; *see also* [R. 105, Pl. Am. Proposed Findings of Fact, Concl. of Law, and Op., at p. 3, ¶ 18] While the decision not to place a watermark onto the Nelson photograph does not vitiate Philpot's copyright in any way, it does weaken the argument that Philpot's copyright was obvious to the defendant's employee before he or she copied the photograph.

articulated the specific factors to consider when setting statutory damages, other courts have considered the following factors: (1) "the expenses saved and profits reaped by the defendants in connection with the infringements," (2) "the revenues lost by the plaintiffs as a result of the defendants' conduct," and (3) "the infringers' state of mind whether willful, knowing, or merely innocent." *Disney Enterprises v. Farmer*, 427 F. Supp. 2d 807, 816–17 (E.D. Tenn. 2006) (internal citations omitted) (awarding $1,200 per infringement that appeared on defendant's website, stating $1,200 was "reasonable and justified" under § 504(c)); *see also Chenson Enterprises, Inc.,* 968 F.2d at 252.

Statutory damages, however, are not designed merely to restitute profit and address actual injury, but rather are also "designed to discourage wrongful conduct." *F.W. Woolworth Co.*, 344 U.S. at 233 (1952); *see also Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998); *Cross Keys Pub. Co., Inc. v. Wee, Inc.,* 921 F.Supp. 479, 481 (W.D. Mich. 1995). Merely awarding statutory damages in the amount of the profits reaped from a copyright infringement would do little to discourage infringers, and it would not be "an effective sanction for enforcement of the copyright policy." *Cross Keys,* 921 F.Supp. at 481. Because the statutory damages rule is designed to deter wrongful conduct, courts have routinely ordered "damages well in excess of—and typically approximately three times—the amount the defendant would have paid if it had properly obtained a license." *Gnat Booty Music v. Creative Catering of Wadhams, LLC*, 761 F. Supp. 2d 604, 609–10 (E.D. Mich. 2011) (citing *Sailor Music v. IML Corp.*, 867 F.Supp. 565 (E.D. Mich. 1994)). The purpose of this de facto treble rule is to put defendants "on notice that it costs less to obey the copyright laws than to violate them." *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001, 1003 (E.D. Va. 1985). Other courts have ruled that when the usual licensing fee is so low that a formulaic approach is insufficient to satisfy the objectives of the Copyright Act, the usual

11

multiplier has been adjusted upward. *See, e.g., Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433, 435 (S.D. N.Y. 2009) (awarding $5,000 in statutory damages in a willful infringement where the alleged royalty fee was only $754.20, because "a lower multiple would be insufficient to deter [defendant] from its practice of infringing first and seeking permission later"); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 411-12 (S.D. N.Y. 2016) (awarding $2,945 in statutory damages for willful infringement of photograph for which estimated licensing fees were $589); *Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900, at *8–9 (S.D. N.Y. Mar. 29, 2017), *report and recommendation adopted,* No. 16CV1277 (DLC), 2017 WL 1906902 (S.D. N.Y. May 9, 2017) (plaintiff, Larry Philpot, recovered $5,000 in "willful" statutory damages where the defaulting defendant published two of Philpot's copyrighted celebrity photographs on its website).

With these factors in mind, the Court finds that an award of $3,500.00 is sufficient under § 504(c)(1) to serve the goals of the Copyright Act. First, the uncontroverted testimony and evidence at trial established that LM Communications reaped no profits from publishing the Nelson photograph and saved no expense. In anticipation of the upcoming concert, LM Communications posted the Nelson photograph on its community events web page along with other upcoming community events, but was not paid to do so. The gross compensation LM Communications received from AEG Live, the concert promoter, for promoting the concert via *on-air radio advertising* was a paltry $500.00. [R. 104, Def. Findings of Fact, Concl. of Law., and Op., at p. 2, ¶ 7] LM Communications saved no expense by using the Nelson photograph because compliance with the Creative Commons license would have cost it *nothing*.

Further, Philpot provided no evidence regarding the license fee he typically charged for use of the Nelson photograph, no doubt because the Creative Commons license required no

12

financial payment whatsoever, but rather required only that the user provide attribution upon republication of the image.[10] It is at least conceivable that the omission of attribution by defendant may have cost Philpot the loss of potential business since viewers of the Nelson photograph on defendant's community events web page were not made aware of the copyright owner's name, website and other information. However, there is no evidence in the record supporting the value of such lost opportunities. Consequently, the Court has no way to estimate actual damages, as a baseline for then assessing the appropriate amount of statutory damages. Indeed, Philpot's post-trial brief leaves blank the requested damages amount, and at trial he argued only that damages should be at least $30,000.00 given defendant's wealth and experience in the radio industry. [R. 104, Def. Findings of Fact, Concl. of Law., and Op., at pp. 13-14]

Given that defendant reaped no profit and saved no expense by use of the Nelson photograph, and Philpot has failed to provide any evidence concerning actual damages or revenues lost, these factors weigh in favor of a reduced award. The fact that defendant's conduct was not willful also weighs in favor of reduced damages. Even applying the "de facto treble" award (or more) followed by other district courts, the award here would be small. Nevertheless, the Court is mindful that an award of statutory damages also serves the purpose of deterring wrongful conduct. Given that defendant's owner, Martin, owns several radio stations and has experience with copyright and licensing issues, the Court awards statutory damages in the amount of $3,500.00 as a deterrent to wrongful conduct.[11]

---

[10] Philpot did testify concerning amounts received as part of various settlement agreements with infringing parties who used the Nelson photograph, but such figures are not persuasive on the issue of revenues lost by Philpot (or actual damages) because parties settle lawsuits for many reasons, not the least of which is to avoid the costs of trial. [R. 103, at pp. 98-105]

[11] This award also seems reasonable in light of the award Philpot recently received in a similar case where the defendant infringed on two copyrighted photographs subject to a Creative Commons license requiring attribution, and the Court awarded Philpot $5,000.00 in statutory damages. *Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900 (S.D. N.Y. Mar. 29, 2017), *report and recommendation adopted*, No. 16CV1277 (DLC), 2017 WL 1906902 (S.D. N.Y. May 9, 2017).

### c. Attorney's Fees

Section 505 of the Copyright Act states that "[e]xcept as otherwise provided by this title, the court *may* . . . award a reasonable attorney's fee to the prevailing party . . ." 17 U.S.C. § 505 (emphasis added). While the award of attorney's fees is not mandatory, the "grant of [attorney's] fees and costs is the rule rather than the exception and they should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008) (other citations omitted). Still, the decision to grant attorney's fees remains within the trial court's discretion. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994) (creating the "*Fogerty* test").

The Court must first determine if there is a "prevailing party" such that an award of fees and costs is appropriate. In copyright infringement cases, "[g]enerally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007) (quoting *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir. 1989)). While the prevailing party need not prevail "in full" to be awarded attorney's fees, the prevailing party must succeed on "a significant issue in the litigation" and "a party's success on a claim that is purely technical or *de minimis* does not qualify him as a 'prevailing party.'" *Thoroughbred Software*, 488 F.3d at 362 (6th Cir. 2007) (citing 4 Nimmer on Copyright § 14.10[B]) (other citations omitted). Finally, in copyright actions, courts consider the following four non-exclusive factors to determine whether an award of attorney's fees is appropriate, especially in cases where the prevailing party status is a close call: (1) "frivolousness of the claim," (2) "motivation," (3) "reasonableness," and (4) "deterrence." *Coles v. Wonder,* 283 F.3d 798, 804 (6th Cir. 2002) (citing *Fogerty,* 510 U.S. at 534, n. 19).

Based on this legal framework, the Court finds that Philpot cannot be said to be a clear "prevailing party" given the amount of claims he lodged and the relatively small award the Court granted under Section 504(c)(1) relative to what he sought. The Court's July Order was not a clear "win" for Philpot. The Order partially granted and partially denied Philpot's motion for summary judgment. [R. 80]

The *Fogerty* factors also weigh against an award of attorney's fees to Philpot. As to the first two factors, the Court does not find that Philpot's lawsuit was frivolous. The Court will also not opine as to Philpot's motivation, though the defendant has urged the Court to view Philpot's ulterior motives in bringing suit.

The Court instead will focus on the reasonableness of the suit and the parties' actions, along with the deterrence value of an award of attorney fees. Philpot's claims throughout this case suffered from underdeveloped evidence and discovery. A scan at public filings across the federal judiciary reveals that Philpot is no stranger to the federal courtroom. He has filed many lawsuits to enforce his copyright, often representing himself *pro se*, so he is not a novice. And while the Court makes no judgment one way or another on this history, the Court notes that Philpot's evidentiary woes in this case are largely his own doing from the period of time when he was representing himself *pro se*. The parties and the Court have expended considerable time, energy, and resources to an action that is not complicated, but was made so due to the actions of the parties. Both parties filed numerous discovery and sanctions-type motions, necessitating the Court's constant involvement and oversight. *See, e.g.*, [R. 14; R. 17; R. 18–19; R. 21–23; R. 25; R. 36-37; R. 39; R. 42; R. 44] At one point, Philpot was ordered to show cause for failing to appear for a telephonic status conference before Magistrate Judge Atkins. [R. 22] The Court also warned the plaintiff that "failure to appear for a deposition or to otherwise fail to respond to

discovery requests as ordered by the Magistrate Judge . . . may result in his case being dismissed . . ." [R. 33]  Likewise, both parties dropped various claims that were largely unsubstantiated, but only after the other party expended time and fees to address those claims.  On this record, and after weighing the relevant case law and *Fogerty* factors, the Court declines to award attorney's fees and costs.  Such an award would serve no deterrent value, consistent with the principles of the Copyright Act, but instead might *incentivize* the kinds of acrimonious and unreasonable litigation conducted in this case.

The plaintiff's Motion for Attorney's Fees and Costs [R. 105] is therefore **DENIED**.

### III. Conclusion

For the reasons discussed above, the Court **FINDS** that Defendant LM Communications' infringement of the Nelson photograph was not willful pursuant to 17 U.S.C. § 504(c)(2), **ORDERS** Defendant to pay Plaintiff Philpot a sum of $3,500.00 pursuant to 17 U.S.C. § 504(c)(1), and **DENIES** Plaintiff Philpot's request for attorney's fees and costs pursuant to 17 U.S.C. § 505.  The Court will enter a Final Judgment consistent with these findings of fact and conclusions of law.

This the 18th day of October, 2018.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY