UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LARRY G. PHILPOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:17-CV-173-CHB |
| v. ) | |
| ) | |
| L.M. COMMUNICATIONS II OF SOUTH ) | |
| CAROLINA, INC., ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on remand from the Sixth Circuit on the issue of attorney's fees and costs. Before the Court is Plaintiff Larry G. Philpot's ("Philpot") Bill of Costs [R. 115], Defendant LM Communications II of South Carolina, Inc.'s ("LM Communications") Motion for an Order Reaffirming the Court's Order Denying Attorney's Fees [R. 116], and Plaintiff's Renewed Motion for Attorneys' Fees and Costs [R. 119]. The parties have filed numerous objections, responses, and replies [R. 118; 123–27], and thus this matter is ripe for decision. For the reasons stated herein, Plaintiff's Motion is denied, Defendant's Motion is granted, and Defendant's Objection to a Portion of Plaintiff's Bill of Costs is overruled.

### I.    Attorney's Fees Under 17 U.S.C. § 505

Section 505 of the Copyright Act provides that "the court in its discretion *may* . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added). The award of attorney's fees is not mandatory, but the "grant of [attorney's] fees and costs is the rule rather than the exception and they should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008). However, "a

1

district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).  The decision to grant attorney's fees ultimately remains within the trial court's discretion, and Section 505 grants courts "wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng*, 136 S. Ct. at 1985; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised on [the *Fogerty* factors]." *Fogerty*, 510 U.S. at 534 (internal citations omitted); *see also Kirtsaeng*, 136 S. Ct. at 1985.  The Court should use these factors "so long as such factors are faithful to the purposes of the Copyright Act." *Fogerty*, 510 U.S. at 527, 534 n.19.  This includes "enriching the general public through access to creative works," and "promot[ing] the Progress of Science and useful Arts." *Id.* at 527.

Philpot is a prevailing party under section 505 of the Copyright Act, as he prevailed on his copyright infringement claim. *Philpot v. LM Commc'ns II of S.C.*, 776 F. App'x 906, 907 (6th Cir. 2019); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 893 (6th Cir. 2004) ("[W]hen a [party] succeeds in having summary judgment entered in its favor on the copyright infringement claims . . . that [party] can only be described as having 'prevailed.'").  Therefore, it is the Court's duty to determine whether attorney's fees are warranted in this action.  There are several *nonexclusive* factors the Supreme Court has endorsed that inform a court's fee-shifting decisions, including: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19; *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002).  The Supreme Court has held that "substantial weight" should be given to the objective reasonableness of the losing party's positions. *Kirtsaeng*, 136 S. Ct. at 1989.  That factor, however, is not controlling, and

district courts continue to retain discretion to "take into account a range of considerations[.]" *Id.* at 1988. For example, a party's litigation misconduct can warrant fee-shifting regardless of how reasonable its positions were. *Id.* at 1988–89; *see also Viva Video, Inc. v. Cabrera*, 9 F. App'x. 77, 80 (2d Cir. 2001); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–595 (6th Cir. 2008).

### A. Objective Reasonableness and Frivolousness

In this case both parties are responsible for bringing and then dropping claims that were largely unreasonable and unsubstantiated, but only after the other party expended time and fees to address those claims. However, in accordance with the Supreme Court's guidance in *Kirtsaeng*, the Court will first evaluate and give substantial weight to the objective reasonableness of LM Communications' litigating positions. A litigation position does not have to prevail to be objectively reasonable, it just requires a reasonable basis in fact and law. *See Bridgeport Music, Inc. v. WB Music Corp*, 520 F.3d 588, 595 (6th Cir. 2008); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014). The "reasonableness" and "frivolousness" factors overlap conceptually. Additionally, the parties make similar arguments regarding these two factors so the Court will consider them together.

Defendant's denial that its infringement was willful pursuant to 17 U.S.C. § 504(c)(2) was clearly reasonable as it prevailed on that issue at trial. The same goes for its positions with respect to Plaintiff's Removal of Copyright Management and Contributory Copyright Infringement claim, which Plaintiff abandoned after the Court denied his motion for summary judgment on that issue. [R. 80 p. 16] However, LM Communications' position with respect to infringement itself was less reasonable—particularly that Plaintiff had not met his prima facie showing that he owned the copyright to the photo at issue and its fair use defense. [R. 52 p. 8; R.

3

80 pp. 13–15] Defendant's counterclaims for declaratory judgment, abuse of process, and malicious prosecution also were without merit given the obvious infringement. To Defendant's credit, it dropped its abuse of process and malicious prosecution claims, but not until Plaintiff was forced to brief the issues.

The reasonableness of Plaintiff's arguments is a mixed bag as well. Plaintiff's copyright infringement claim was clearly meritorious, and the Court granted summary judgment on that issue. Plaintiff withdrew his claim for damages under the Digital Millennium Copyright Act (DMCA) after the Court found his motion for an adverse inference instruction utterly meritless and unsupported and found that Plaintiff brought forth "no evidence" to support his DMCA claim. *See* [R. 80 p. 16, 9 n. 6 ("Of some concern to the Court is whether it was appropriate for Plaintiff to bring this claim without investigating further . . . . In other words, the Court wonders whether Plaintiff conducted a reasonable inquiry under the circumstances as he investigated this case.")] Finally, Plaintiff's argument that Defendant willfully infringed upon his copyright to warrant an increase in statutory damages was wholly unsupported. [R. 106 pp. 8–10] The scant evidence Plaintiff presented to show that Defendant knew or should have known of his copyright was that Defendant had experience in the radio industry and therefore must have known about copyrights (even though Plaintiff admitted at trial that he failed to right click protect his photograph to prevent copying by viewers unaware of his copyright). [*Id.* p. 9]

When viewing the frivolousness and reasonableness factors together, giving substantial weight to the objective reasonableness of LM Communications' positions, they weigh slightly in favor of granting a minimal amount of attorney's fees, reduced substantially for Plaintiff's own conduct. Even so, as explained below, after weighing the additional *Fogerty* factors the Court finds that no award of fees is appropriate.

4

B.  **Deterrence and Motivation**

The acrimonious and unreasonable litigation conducted in this case is the type that should not be encouraged under any circumstance. Both parties filed numerous discovery and sanction-type motions which required constant oversight by the Court. *See, e.g.*, [R. 14; R. 17; R. 18–19; R. 21–23; R. 25; R. 36–37; R. 39; R. 42; R. 44] These motions were easily avoidable if the parties acted promptly and reasonably. *See* [R. 80 p. 6] Moreover, Plaintiff's claims throughout this case suffered from underdeveloped evidence and discovery. *See, e.g.*, [R. 80 p. 9 n. 6] Plaintiff's initial *pro se* status may have contributed to this problem, but, as noted by the Court previously, Plaintiff is no stranger to the federal court and has significant experience filing suits similar to this one. *See* [R. 106 p. 15] Plaintiff's choice to delay in warning Defendant that it was infringing on his copyright and to delay in bringing suit also contributed to this problem. [R. 106 p. 9 n.8] Plaintiff was also ordered to show cause for missing a telephonic status conference before Magistrate Judge Atkins and was warned that failing to comply with discovery and appear for his depositions would result in his case being dismissed. [R. 33] On the other hand, Defendant's response to Plaintiff's conduct was to file meritless counterclaims and refuse to admit liability on an obvious copyright infringement.

One of the sources for the hostility between the parties relates to Plaintiff's motivations regarding this suit. Although the Court declined in its previous order to scrutinize Plaintiff's motivations, it will do so now. [R. 106 p. 15] Plaintiff has filed countless similar suits across the country, leading other courts to label him a "copyright troll." *See Philpot v. Emmis Operating Co.*, 1:18-CV-00816-RP, 2019 WL 2928774, at *2 (W.D. Tex. July 8, 2019) (observing that Philpot "use[s] the courts as a blunt object with which to coerce nuisance value settlements from unsuspecting parties"). Plaintiff's suspect motivations became apparent in this litigation as well.

In his sworn Affidavit and other pleadings, Plaintiff represented that he has "made tens of thousands of dollars licensing" the Willie Nelson photograph at issue in this case. [R. 44-1 ¶ 3; R. 105 ¶ 25]  At trial, Plaintiff gave examples of having "licensed" the photograph for between $40.00-$20,000.00. [R. 103 pp. 99–105]  When pressed by the Court at trial for specifics, however, it became apparent that Plaintiff was describing settlements extracted after Plaintiff confronted the infringer for failing to provide attribution per the "Creative Commons" license. Plaintiff described such payments as "more or less an invoice," ignoring the obvious: such payments are not licensing fees, but rather nuisance value settlements to avoid litigation costs. Plaintiff failed to give the Court a single example of having actually licensed the Willie Nelson photograph as part of an arm's length commercial negotiation (outside of the threat of litigation), but nevertheless claimed $175,000 in damages in his Complaint, $150,000 of which was for the infringement.[1]  Plaintiff was awarded $3,500 in statutory damages, and Defendant could have obtained the photo for free under Plaintiff's Creative Commons License had it simply given proper attribution. [R. 1 ¶ 37–38; R. 80 pp. 1–2]

      To be sure, Defendant clearly infringed upon Plaintiff's copyright.  However, Plaintiff's own description of his business practice shows that he is more in the business of litigation (or threatening litigation) than selling his product or licensing his photograph to third parties. *See Malibu Media LLC v. Doe*, No. 15-cv-4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (defining copyright trolls).  A quick search of the public filings in the federal judiciary corroborates this. *See, e.g.*, *Philpot v. WOS, Inc.*, 1:18-CV-339-RP, 2019 WL 1767208 at *3 n.3 (W.D. Tex. Apr. 22, 2019) (collecting cases filed by Philpot); *Philpot v. Music Times LLC*,

---

[1] Another court has found that the $150,000 is Plaintiff's "standard" damage request. *Philpot v. Emmis Operating Co.*, 1:18-CV-00816-RP, 2019 WL 2928774, at *2 (W.D. Tex. July 8, 2019).

16cv1277 (DLC) (DF), 2017 WL 9538900, at *10–11 (S.D.N.Y. March 29, 2017) ("It is also worth noting that, since January 2016, Plaintiff has filed at least 15 other copyright cases in this Court, and they all seem to reflect a pattern of extremely limited work by counsel. Of the other cases that this Court has identified, five were settled or otherwise voluntarily dismissed shortly after the cases were commenced. In each of the remaining 10 cases, Plaintiff filed a complaint through counsel, and then—as in this case—counsel sought leave to withdraw, typically within two to three months of the date when the action was filed."). Plaintiff's motives behind this suit, given his business practices and conduct during the litigation, are questionable at best despite his valid infringement claim.

The Court must view a request for attorney's fees in light of the Copyright Act's goals, chief among them enriching the general public through access to creative works. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Therefore, attorney's fees should encourage meritorious claims and defenses. Plaintiff is correct that granting attorney's fees in small value cases opens the courthouse doors to parties who would otherwise not be incentivized to bring such claims. But "Philpot is far from a shining example of a litigant who uses the court system to vindicate important rights." *Philpot v. Emmis Operating Co.*, 1:18-CV-00816-RP, 2019 WL 2928774, at *2 (W.D. Tex. July 8, 2019). Instead, Plaintiff's tactic is to place his photos on the internet, protected only with a "Creative Commons" license (and not right-click protected or protected by a watermark that would alert the potential infringer of the copyright). [R. 103 pp. 81–82, 88] When a user re-publishes an image without attribution, he makes demand for payment or threatens litigation. Defendant is also correct that allowing attorney's fees in every case where a plaintiff brings a successful infringement claim would incentivize that plaintiff to bring as many other claims as

7

possible, regardless of their merit, because the defendant would be on the hook for the attorney's fees.

This is why 17 U.S.C. § 505 provides the Court discretion to award reasonable attorney's fees. Consideration of all of the *Fogerty* factors, including the contentiousness of both sides and Plaintiff's questionable motives, and giving substantial weight to the objective reasonableness to LM Communications' positions, weighs against an award of fees to Philpot under 17 U.S.C. § 505. Plaintiff's $3,500 recovery in relation to his damages sought ($150,000 for the copyright violation, $175,000 total) only further corroborates this. *See Shame on You Productions, Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) (requiring district courts in the Ninth Circuit to consider the degree of success obtained in addition to the nonexclusive *Fogerty* factors); *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 329 (1st Cir. 2017); *American Bd. Of Internal Medicine v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013); *Allora, LLC v. Cambridge Builders of Johnston Cty, Inc.*, 532 F. App'x 349, 352 (4th Cir. 2013); *see also* [R. 1 p. 8 (Plaintiff's sought damages)]. Given Plaintiff's questionable litigation history in the federal courts and specifically his conduct and motivations in this case, the proper exercise of the Court's discretion here is to reject his request for fees. Such an award would serve no deterrent value, but instead would incentivize the improper motivations on display in this case.

**II.      Bill of Costs**

Defendant objects to certain submissions included in Plaintiff's Bill of Costs. Plaintiff's Bill of Costs includes the following: the case filing fee and issuance of summons; the fee to file notice of appeal; the trial transcript for appeal; and the pretrial conference transcript for appeal. [R. 115 p. 3] The total amount is $1,889.80. [*Id.*] Defendant argues that the latter three

8

submissions should not be taxed as costs. [R. 118]  It does not oppose the case filing fee and issuance of summons.

The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505.  While Plaintiff argues that "full costs" under Section 505 includes all costs actually incurred, the Supreme Court made clear that "full costs" means only the costs specified in the general costs statute, codified in 28 U.S.C. §§ 1821, 1920. *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) (explaining that "full" refers to the amount rather than the type of costs).[2]

However, 28 U.S.C. § 1920 lists six categories of costs that may be taxed against the losing party, including "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "fees of the clerk."[3]  Defendant argues that these submissions should not be taxed as costs because the Sixth Circuit Court of Appeals did not tax them as costs.  Federal Rule of Appellate Procedure 39 governs taxable costs on appeal.  Rule 39(e) provides costs that are taxable in the district court, which include the reporter's transcript, and the fee for filing the notice of appeal. Fed. R. App. P. 39(e), (2), (4). *See, e.g.*, *King v. Gowdy*, No. 02-CV-75136-DT, 2008 WL 1820837, at *4 (E.D. Mich. April 22, 2008); *Re Hui v. Rom*, No. 1:15-CV-

---

[2] Plaintiff cites *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005) to argue that "limiting award to taxable costs improperly would read "full" out of § 505". [R. 119 p. 6]  This case was explicitly abrogated by the Supreme Court in *Rimini Street*.

[3] The six categories that a federal court may award as costs are:

"(1) Fees of the clerk and marshal;
"(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
"(3) Fees and disbursements for printing and witnesses;
"(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
"(5) Docket fees under section 1923 of this title;
"(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

1869, 2018 WL 6694786, at *3 (N.D. Ohio, Dec. 20, 2018). Plaintiff's transcripts and filing fee fit into the enumerated costs provided by Rule 39(e)(2), (4) and those provided by 28 § 1920(1), (2).

Given that the costs Plaintiff seeks are allowable, the question then is whether the Court should award them pursuant to 17 U.S.C. § 505. Fed. R. Civ. P. 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Sixth Circuit has held that this rule "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).

> The rule establishes a norm of action: prevailing parties are entitled to their costs as of course. Departures from the rule are permitted; however, "when rules prescribe a course of action as the norm but allow the district court to deviate from it, the court's discretion is more limited than it would be if the rule were nondirective."

*Id.* Accordingly, the unsuccessful party bears the burden of showing why the presumption of awarding costs should not apply. *Id.* at 732. (citing *Lichter Foundation, Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959)). The unsuccessful party must show that it would be inequitable under all of the circumstances to force them to pay the successful party's costs. *Id.* at 730. Examples of circumstances where the equities favor denying a successful party costs include:

> cases where taxable expenditures by the prevailing party are unnecessary or unreasonably large, cases where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues, cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant, and cases that are "close and difficult."

*Id.* (internal citations omitted). Defendant has not met his burden of showing why it would be inequitable to apply the presumption of awarding costs in this case. Plaintiff's bill of costs includes only four submissions for a total of $1,889.80, and the submissions Defendant objects to

10

only amount to $1,489.80.  Defendant's only argument for why these costs should not be taxed is that the Sixth Circuit did not tax them.  However, as previously explained this does not prevent this Court from awarding costs under Fed. R. App. 39(e), nor does it provide grounds for obviating the presumption in favor of awarding costs under Rule 54(d).  Therefore, Plaintiff's bill of costs shall be taxed against Defendant in full.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AS FOLLOWS**:

1. Pursuant to Federal Rule of Civil Procedure 54(d)(1), Federal Rule of Appellate Procedure 39(e), and 28 U.S.C. § 1920, costs are taxed in favor of Plaintiff against Defendant in the amount of $1,889.80.

2. Defendant's Motion for an Order Reaffirming the Court's Order Denying Attorney's Fees **[R. 116]** is **GRANTED**.

3. Plaintiff Larry G. Philpot's Renewed Motion for Attorneys' Fees and Costs **[R. 119]** is **DENIED**.

4. All issues having been resolved, this matter is **STRICKEN** from the Court's active docket.

This the 15th day of May, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY